## CITY OF ENID v. BROOKS.

No. 18305.   Opinion Filed July 24, 1928.

(Syllabus.)

1. **Appeal and Error—Review—Evidence Sufficient.**

Evidence examined, and held sufficient to support the verdict rendered.

2. **Municipal Corporations—Pollution of Stream by Municipality—Right of Action by Riparian Owner.**

The pollution of a stream by the discharge of sewage into it occasioned by the negligent operation and maintenance of a municipal sewer system by the officers and

agents of said municipality gives a riparian proprietor injured thereby a right of action against the municipality.

### 3. Same—Additional Pollution by Others no Defense.

In an action against a municipality for the negligent pollution of a stream, the fact that others discharged waste and refuse into the stream would be no defense or excuse for the municipality to add thereto, nor would that fact prevent a riparian proprietor from recovering damages sustained by him, and caused by the negligence of the municipality.

### 4. Appeal and Error—Contributory Negligence not Available for First Time on Appeal.

Contributory negligence, as a defense, cannot be raised in the Supreme Court on appeal for the first time.

Commissioners' Opinion, Division No. 2.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by Lydia M. Brooks against the City of Enid for damages by reason of the pollution of a stream by the city's sewer system. Judgment for plaintiff, and defendant appeals. Affirmed.

A. E. Underwood, for plaintiff in error.

H. O. Glasser and A. L. Zinser, for defendant in error.

JEFFREY, C. This action was commenced in the district court of Garfield county on June 27, 1922, by Lydia M. Brooks, as plaintiff, against the city of Enid, as defendant, for damages by reason of certain inconveniences and annoyances alleged to have been caused said plaintiff by the defendant's negligent operation of its sanitary sewer system during the two years next preceding the filing of the action. The petition alleged that plaintiff was the owner of 160 acres of farm land adjoining the city of Enid on the southeast, and had her residence located thereon; that the city of Enid, about the year 1910, erected septic tanks on the south side of said city for the purpose of disposing of its sewage; that there is a small creek extending from within the corporate limits of the city of Enid into plaintiff's premises, known as Boggy creek; that said Boggy creek runs within 70 feet of plaintiff's residence on the west, extends north, then east and back along the east side of plaintiff's residence at a short distance away. That prior to 1910, said stream afforded an abundance of pure water for domestic purposes, but that since said time, and especially during the period covered by this action, the city of Enid caused its sewage to be emptied from its septic tanks into said creek about one mile above plaintiff's premises; that during said period of time the defendant carelessly and negligently operated and maintained said septic tanks and sewer system so that said tank failed to perform its functions and failed to purify the sewage passing through it; and that during the two years prior to the filing of this suit by reason of the negligence of said defendant said sewage has contaminated and polluted the waters of Boggy creek so that said water became foul and impregnated with poisonous substances, emitted a noxious and noisome stench, and became injurious to the health of plaintiff and her family, and endangered the health, safety and comfort of plaintiff and her family, and interfered with the comfortable use and enjoyment of plaintiff's home by reason of the same having been rendered uncomfortable, unwholesome and unfit for habitation. Plaintiff further alleged that her farm was specially suited for dairying purposes, but by reason of her water supply being contaminated she was forced to abandon the dairy business. Plaintiff further alleged that by reason of the wrongful acts of the defendant the usable value of plaintiff's property has been depreciated, and she has suffered annoyance and discomfort to her damage in the sum of $5,000 a year, or a total sum of $10,000, and asked for judgment for that amount. Defendant filed a general denial. Upon the issues thus formed, the cause was tried to a jury, and a verdict returned in favor of plaintiff for the sum of $2,500. Judgment was duly rendered thereon and defendant has appealed to this court.

The principal objections here raised are that the evidence is insufficient to support the verdict of the jury; that the verdict of the jury is contrary to the evidence and the instructions of the court. The action was brought and maintained on the theory that the nuisance maintained by the city was an abatable one, the injury a continuing injury, for which successive actions might be brought for temporary damages only. There was no evidence as to a permanent or prospective future injury, and the question of permanent injury was excluded from the jury. Under this theory, the proper measure of damages would be the depreciation of the usable value of the land by reason of maintenance of such nuisance, and in addition thereto plaintiff may recover damages for such discomfort, an-

noyance and personal inconvenience as plaintiff may have sustained as the approximate result thereof. Ponca City Refining Co. v. Smith, 73 Okla. 6, 174 Pac. 268; City of Cushing v. High, 73 Okla. 151, 175 Pac. 229. As to the negligence of the city in maintaining and operating the sewer system and particularly the septic tanks the evidence shows that septic tanks were installed about the year 1910; that prior to that time the water in said creek was clear, usable for domestic purposes, and contained fish; that about 1919, there was a demand for a larger and different system for sewage disposal. A new sewage disposal plant was commenced sometime about the first of 1921, and was completed on August 12, 1921. There is evidence that the old septic tanks, over a period of approximately one year prior to the completion of the new tank, were overloaded and did not function properly so as to purify the sewage before it was discharged into Boggy creek above plaintiff's premises. The evidence further shows that as to the principal septic tank no attention was given it to see that it was functioning properly over a period of four or five months immediately prior to the completion of the new disposal plant. The evidence further shows that the treatment of the sewage by means of the septic tanks resulted in a separation of the fluids and the solid matter; that the solids would sink to the bottom of the tank and accumulate in great volumes; that these tanks were only cleaned out at intervals of several months and were cleaned by opening flood gates at the bottom of the tanks and forcing the solid matter into Boggy creek, while there was a rise in the water of the creek. One of plaintiff's witnesses testified that he saw the city employees clean one of the tanks and dump the sludge or solid matter just outside the tank and upon the banks of the creek, when there was not sufficient water to carry it away. We think there was ample evidence of failure to use ordinary care in the maintaining and operating the sewer system during at least the greater part of the two years covered by this suit.

The evidence further shows that plaintiff owned 160 acres of land about one mile below the city's disposal plant on Boggy creek; that she erected thereon a 12 room modern house which she used as a home for herself and family. That the farm was especially suited for and was originally purchased principally for the purpose of operating a dairy; that she attempted to operate a dairy on said premises both before and during the period of time covered by this suit, but that because of the water in Boggy creek being polluted, and it being impracticable to deny her dairy cows access to said stream, she was unable to sell and dispose of her dairy products. Some eight or ten witnesses, including plaintiff, testified to the noxious odor produced by the water of Boggy creek, and also as to the condition of the water where the same flows through plaintiff's premises. This evidence discloses that the water was continually covered with a scum; that the banks along the edge of the water were covered by sediments of filth; that sometimes the water was dark in color and other times it was milky, but never clear, as it had been prior to the pollution complained of. Plaintiff and another testified that frequently in the evenings in the summer time the stench from the creek became so unbearable that one would have to hold his nose to go out in the yard or about the barn; and that frequently on hot summer evenings it became necessary to close the doors and windows of plaintiff's home and burn sulphur from the basement to the attic in order to kill the odor. Two or three witnesses, in describing the odor that came from the water of Boggy creek in the vicinity of plaintiff's home, said that it was the odor of human sewage. Plaintiff also testified without objection that by reason of the pollution of said stream by defendant the usable value of her farm and home had depreciated $2,500 per year for the two years covered by the suit. We think there can be no doubt but that the evidence is sufficient to raise the issue of failure to use ordinary care on the part of the city, to show a causal relation between the negligence and the injury complained of, and to also show a substantial injury to the usable value of plaintiff's home and farm and also a damage by reason of the discomfort, annoyances and personal inconveniences caused plaintiff by the defendant. It is also suggested that the verdict is excessive, but with this we cannot agree,

It is further contended that the negligence of the officers of the city of Enid in the disposition of sewage of the city is not a negligence of the city in its corporate capacity for the reason that the operation of the sewer system is a governmental act which does not render the city liable for such negligent acts. This question is not briefed except to cite the case of Oklahoma City v. Foster, 118 Okla. 120, 247 Pac. 80. That case is not applicable except the general

discussion of a city's liability while in the exercise of two classes of powers possessed by it, and, in so far as it is applicable to the case at bar, it affords no comfort to defendant on this question. It seems that it has been generally conceded that a municipality is liable to a riparian owner because of pollution of a stream by reason of the negligent acts of the officers and agents of said municipality in disposing of sewage. Numerous cases like the instant one have been before this court in which damages for the negligent operation of a municipal sewer system have been upheld, and yet the exact question here raised seems not to have been raised in any of them. In 40 Cyc. 595, the rule is stated as follows:

"Pollution of a stream by the discharge of sewage into it gives a right of action to a riparian proprietor injured thereby; and a municipality, merely as a riparian owner, has no more right to pollute the stream by discharging sewage therein than any other riparian owner, although it may acquire the right to use the stream to carry off sewage by prescription, or by purchase or condemnation."

In the case of Bowden v. City of Kansas City, Kansas, 69 Kan. 587, 77 Pac. 573, a similar question was before the court. In that case plaintiff was a member of the fire department, which was owned and operated by the city. At the fire station, the floor, where plaintiff performed his duties in fastening the harness about the horses when an alarm was given, had become worn and rotten so that a hole had been made in it. While plaintiff was in the discharge of his duties after a fire alarm had been turned in, a horse stumbled into the hole and fell against plaintiff, which resulted in serious injury. In discussing the liability of the city in such cases the court said:

"In determining the necessity for a fire department, the number and location of fire stations, the kind, quality and number of fire-extinguishers, and all matters involving the efficiency of such department, the council are in the exercise of their legislative power, judgment, and discretion. In the performance of such duties the questions of nonfeasance or misfeasance are not subjects of judicial inquiry. Having, however, determined these questions, the execution of the work and management of its property is ministerial. In determining the locality, width and grade of streets, and in establishing a system of sewers, and the kind and location of the pipes therefor, the corporation exercises its legislative authority; in the one instance as a government instrumentality; in the other, in its public capacity, as benefactor of the inhabitants. In

either case the city is liable to property owners for injury to their property occasioned by the negligent execution of the plan."

See, also, City of Toledo v. Cone, 41 Ohio St. 149. We conclude that the city is liable to a riparian owner for damages sustained by reason of the negligent operation of a municipal sewer system by its officers and agents.

Defendant also contends that since the evidence disclosed that Boggy creek was polluted by storm sewers, which drained areas about various industrial plants and from other sources, that plaintiff was not entitled to recover. The fact that the stream may have been polluted from other sources would be no defense or excuse for the defendant to add thereto; and would be no defense to a rcovery for any damages caused by its act. City of Cushing v. High, 73 Okla. 151, 175 Pac. 229.

It is next contended that plaintiff was guilty of contributing to the condition for which she claims damages, and for that reason is not entitled to recover. During the course of the trial it developed that plaintiff, during recent years, caused the sewage from her home to be emptied into Boggy creek. It is true, as a general rule, that if negligence of the injured party contributed in any degree to the injury complained of no recovery can be had. But contributory negligence is an affirmative defense and must be specially pleaded. It cannot be raised by a general denial. Colonial Refining Co. v. Lathrop, 64 Okla. 47, 166 Pac. 747; Enid City Ry. Co. v. Webber, 32 Okla. 180, 121 Pac. 235. Contributory negligence on the part of plaintiff was not pleaded in any form. The case was not tried upon that theory. No instruction on contributory negligence was offered by defendant, none was given, no objection was made on that account, and this defense was not suggested until the case reached this court. Contributory neg'igence, as a defense, cannot be raised in this court for the first time.

We find no error in the record, and the judgment of the trial court is affirmed.

BENNETT, HERR, DIFFENDAFFER, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. p. 852, §2834. (2) 43 C. J. p. 1148, §1907; p. 1149, §1908; 40 Cyc. p. 595; 27 R. C. L. p. 1224. (3) 43 C. J. p. 1151, §1909. (4) 3 C. J. p. 699, §590.